**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee,*

v.

RODOLFO SUAREZ, JR.,
       *Defendant-Appellant.*

No. 10-10393
DC No.
CR 08-124-4 OWW
OPINION

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, Senior District Judge, Presiding

Argued and Submitted
February 16, 2012—San Francisco, California

Filed June 22, 2012

Before: A. Wallace Tashima and Barry G. Silverman,
Circuit Judges, and Lynn S. Adelman, District Judge.*

Opinion by Judge Tashima

---

*The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

UNITED STATES v. SUAREZ  7417

## COUNSEL

Karen A. Escobar, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

David Thomas Reagan, Oakland, California, for the defendant-appellant.

## OPINION

TASHIMA, Circuit Judge:

Defendant-Appellant Rodolfo Suarez appeals his conviction for conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Suarez contends that the guilty verdict on that charge is fatally inconsistent with the jury's decision to acquit him on a charge of possession with intent to distribute methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Suarez also appeals his sentence of 240 months' imprisonment, which the district court imposed based on the twenty-year mandatory minimum required by 21 U.S.C. § 841(b)(1)(A). He contends that his 2003 guilty plea to felony drug possession in California state court does not qualify as a "prior conviction" that "has become final" within the meaning of § 841(b)(1)(A). We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm Suarez's conviction, but vacate his sentence, and remand for resentencing.

## I. Background

Cal. Penal Code § 1000.1(b) provides for deferred entry of judgment for a first-time drug offender who meets certain prerequisites, pleads guilty, and enters a drug rehabilitation program. If the defendant successfully completes rehabilitation, the criminal charge against him is dismissed; if the court finds that the defendant is not performing satisfactorily, the court renders a finding of guilty to the charge pled, enters judgment, and schedules a sentencing hearing. Cal. Penal Code

UNITED STATES v. SUAREZ                7419

§ 1000.3. The statute provides that the defendant's plea of guilty "shall not constitute a conviction for any purpose unless a judgment of guilty is entered." Cal. Penal Code § 1000.1(d). "Upon successful completion of a deferred entry of judgment program, the arrest upon which the judgment was deferred shall be deemed to have never occurred." Cal. Penal Code § 1000.4(a).

In 2003, a felony complaint was filed against Suarez in California Superior Court, alleging that he committed two violations of the California Health and Safety Code: (1) felony possession of methamphetamine; and (2) the misdemeanor of being under the influence of methamphetamine. Suarez entered a plea of guilty and opted to participate in the § 1000.3 deferred entry of judgment program, which he successfully completed on May 21, 2004. The case against him was dismissed on March 2, 2005.

In 2009, a federal indictment was returned against Suarez and six co-defendants. Count One charged Suarez and his co-defendants with conspiracy to distribute and to possess with intent to distribute methamphetamine and cocaine. The indictment alleged that the conspiracy began no later than September 6, 2006 and continued until approximately April 17, 2008. Count Six charged Suarez and three co-defendants, including Eustorgio Flores, with possession with intent to distribute methamphetamine. The remaining counts in the indictment charged Suarez's co-defendants with various other drug-related offenses. Four of Suarez's co-defendants pled guilty before trial.

On March 6, 2010, the government filed an information, as required by 21 U.S.C. § 851, providing notice of its intention to seek an enhanced mandatory minimum sentence of twenty years' imprisonment for Suarez, pursuant to § 841(b)(1)(A). Section 841(b)(1)(A) provides, in part, that "[i]f any person commits [a violation of § 841(b)(1)(A)] after a prior conviction for a felony drug offense has become final, such person

7420                UNITED STATES v. SUAREZ

shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment." The government sought the enhanced sentence based on Suarez's dismissed California felony possession charge from 2003.

In response, Suarez filed a motion to dismiss the information. He argued that the California felony possession charge did not qualify as a "prior conviction" that "has become final" under § 841(b)(1)(A), because it had been dismissed and because California law stated that his guilty plea pursuant to § 1000.3 was not to be treated as a conviction for any purpose. The government opposed the motion, but the district court declined to rule on the issue prior to trial.

Suarez, Flores, and their co-defendant Pioquinto Larios Santacruz proceeded to a jury trial. The government presented the testimony of Drug Enforcement Administration ("DEA") Special Agent Todd Keuhnlein and a confidential source ("CS"), as well as 27 other witnesses. Agent Keuhnlein testified that the DEA began an investigation into Flores and Santacruz in 2007, based on information provided by the CS. Agent Keuhnlein testified that in April 2008, the CS arranged to buy cocaine and methamphetamine from Flores.

The DEA began wiretapping Flores' telephone in January 2008. The government presented three recorded conversations between the CS and Suarez, all taped within a few days of April 17, 2008, in which Suarez told the CS that the "cardboard boxes" would be "showing up soon," discussed the price of the "white box," and gave the CS directions to the nursery where Suarez and Flores worked. Agent Keuhnlein testified that, based on his experience, Suarez had become a "pretty big player" in the drug transaction at that point. On appeal, Suarez challenges that testimony, arguing that in some of these conversations he was simply acting as a Spanish-to-English translator for Flores.

In a fourth recorded phone call, on April 17, 2008, Suarez told the CS that the five "windows" that the CS had ordered had arrived, but that the "styrofoam" was not ready. In a subsequent call made on the same day, Suarez explained to the CS that the pick-up location had changed, that the CS could follow Suarez and Flores to the new location, and that their supplier would "give [the CS] the windows and load them up, you know." Keuhnlein testified at trial that "cardboard boxes" referred to drugs, "styrofoam" and "white box" were code words for cocaine, and "five windows" was code for five pounds of crystal methamphetamine.

Keuhnlein testified that he and the CS met Flores and Suarez at a Texaco station on April 17, 2008, and that the CS and Keuhnlein followed Suarez's car in their truck for about ten to fifteen minutes, until they reached a house in Farmersville. Agent Keuhnlein testified that Suarez drove erratically, changing speeds frequently, a technique Keuhnlein has seen used to detect law enforcement agents that may be following a car. Suarez dropped Flores off in front of the house and then left the area; it was Keuhnlein's understanding that Suarez was keeping watch from a remote location. Law enforcement officers subsequently arrested Flores and Suarez and seized over 1,500 grams of crystal methamphetamine from the Farmersville house.

Keuhnlein further testified that he interviewed Suarez on April 18, 2008, and that Suarez admitted that he had participated in two drug transactions: one in midsummer 2006, in which the CS had purchased four or five bags of crystal methamphetamine and cocaine, and the other on April 17, 2008. Suarez also told Keuhnlein that he knew that the April 17 transaction was for five kilograms of cocaine and five pounds of methamphetamine and that he expected payment for his involvement in the sale.

Suarez did not present any evidence at trial. The jury found Suarez guilty of the conspiracy charge in Count One with

7422              United States v. Suarez

respect to the required amount of methamphetamine, but not with respect to the required amount of cocaine. The jury also found Suarez not guilty of the charge in Count Six, possession of methamphetamine with intent to distribute. In contrast, the jury found Flores guilty of both Counts One and Six.

Suarez filed a motion for a judgment of acquittal, contending that the jury had handed down impermissibly inconsistent verdicts and reasserting his argument that a twenty-year mandatory minimum sentence would not be appropriate given his participation in the California deferred judgment program. Suarez's Pre-Sentence Investigation Report recommended a sentence of 292 months. In response, Suarez filed a sentencing memorandum in which he again objected to the application of the twenty-year mandatory minimum under § 841(b)(1)(A). The district court orally denied Suarez's motion for a judgment of acquittal and sentenced Suarez to 240 months in custody after concluding that Suarez's prior felony plea was a proper basis for a sentencing enhancement under § 841(b)(1)(A). Suarez timely appealed his conviction and sentence.

## II.  Standard of Review

Where a defendant moved for acquittal before the district court, this court reviews de novo whether sufficient evidence exists to support a guilty verdict. *United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005). The same de novo standard of review applies to the legal determination of whether a defendant may upset a guilty verdict because it is inconsistent with an acquittal. *United States v. Hart*, 963 F.2d 1278, 1280 (9th Cir. 1992). The construction and interpretation of 21 U.S.C. § 841(b)(1)(A) is a question of law, also reviewed de novo. *United States v. Norbury*, 492 F.3d 1012, 1014 & n.2 (9th Cir. 2007).

### III.  Discussion

#### A.  Inconsistent Verdicts

**[1]** Suarez argues that his acquittal on the possession charge is "fatally inconsistent" with the jury's guilty verdict on the conspiracy charge because, he contends, the possession count was the only overt act on which a conviction for conspiracy could have been based. Suarez's challenge is without merit. We need not decide whether the verdicts were actually inconsistent, for it is well-established that "[i]nconsistent verdicts may stand, even when a conviction is rationally incompatible with an acquittal, provided there is sufficient evidence to support a guilty verdict." *United States v. Guzman*, 849 F.2d 447, 448 (9th Cir. 1988) (quoting *United States v. Birges*, 723 F.2d 666, 673 (9th Cir. 1984)); *see also United States v. Dota*, 33 F.3d 1179, 1187 (9th Cir. 1994) ("Jury verdicts are insulated from review for inconsistency."). We have applied this rule to reject challenges to guilty verdicts in cases that are factually indistinguishable from the case at bench. *See Hart*, 963 F.2d at 1280-82 (rejecting the defendant's challenge to his conviction for conspiracy to distribute cocaine based on alleged inconsistency with acquittal for distribution of cocaine); *Guzman*, 849 F.2d at 447-49 (rejecting the defendant's challenge to his conviction for conspiracy to possess with intent to distribute cocaine based on alleged inconsistency with acquittal for possession of cocaine). Consequently, Suarez's sentence on the conspiracy count should stand as long as it is supported by sufficient evidence.

The evidence that Suarez conspired to possess or to distribute methamphetamine is sufficient if, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found Suarez guilty beyond a reasonable doubt of the elements of the crime. *See United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This review should be independent of the jury's determina-

tion that evidence on another count was insufficient." *United States v. Powell*, 469 U.S. 57, 67 (1984).

**[2]** The evidence presented to the jury, viewed in the light most favorable to the government, was certainly sufficient for a rational trier of fact to find Suarez guilty of conspiracy to distribute methamphetamine. In order to prove a conspiracy under 21 U.S.C. § 846, the prosecution must prove that: (1) there was an agreement to accomplish an objective made criminal by § 841(a)(1), which prohibits the knowing or intentional distribution of or possession with intent to distribute a controlled substance; and (2) the defendant intended to commit the underlying offense. *See United States v. Mincoff*, 574 F.3d 1186, 1192 (9th Cir. 2009).

**[3]** Moreover, proof of an overt act in furtherance of the conspiracy is not required in order to prove a violation of § 846; proof of an agreement alone is sufficient. *United States v. Shabani*, 513 U.S. 10, 15-16 (1994). Such an agreement can be shown through circumstantial evidence that the defendants acted together in pursuit of a common illegal goal. *Mincoff*, 574 F.3d at 1192. The prosecution introduced voluminous evidence that Flores and Suarez were working together to sell five pounds of methamphetamine to the CS; the jury was thus presented with ample reason to find that Suarez had made an agreement with Flores to distribute the drug. We therefore affirm Suarez's conspiracy conviction as supported by sufficient evidence.

## B.  Section 841(b)(1)(A) Sentence Enhancement

Section 841(b)(1)(A) provides for a twenty-year minimum term of imprisonment for a defendant who has committed an offense under § 841(b)(1)(A) "after a prior conviction of a felony drug offense has become final." Suarez contends that his guilty plea to felony drug possession in California, which never resulted in the entry of a judgment of guilt by the Cali-

UNITED STATES v. SUAREZ                7425

fornia state court, does not trigger the application of
§ 841(b)(1)(A).[1]

The government argues in response that the Supreme
Court's decision in *Dickerson v. New Banner Institute, Inc.*,
460 U.S. 103 (1983), *overruled by statute as stated in United
States v. Brebner*, 951 F.2d 1017, 1021 (9th Cir. 1991), controls this case. In *Dickerson*, the Court held that the term
"conviction" under 18 U.S.C. § 922 includes state court convictions that were later expunged or dismissed without judgment. *Id.* at 111-14.[2] The *Dickerson* definition of "conviction"
has also been applied in our cases discussing the "prior conviction" requirement in § 841(b)(1)(A). *Norbury*, 492 F.3d at
1015 (holding that an expunged or dismissed state court conviction still qualifies as a "prior conviction" under
§ 841(b)(1)(A)).

The statute at issue in *Dickerson* (§ 922), however, unlike
§ 841(b)(1)(A), does not additionally require that the prior
conviction have "become final." We must construe that added
provision as more than mere surplusage, and assume that it
has some meaning independent of the "prior conviction"
requirement. *See United States v. Barraza-Lopez*, 659 F.3d
1216, 1220 (9th Cir. 2011) (quoting *Am. Vantage Cos. v.
Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir.
2002)).

Whether a conviction is "final" for purposes of a
§ 841(b)(1)(A) sentence enhancement is a question of federal,

---

[1]Suarez also raises an equal protection challenge to his sentence
enhancement under § 841(b)(1)(A). Because this argument was not raised
before the district court below, we deem it waived. *See Hillis v. Heineman*,
626 F.3d 1014, 1019 (9th Cir. 2010).

[2]At the time, 18 U.S.C. § 922(g) and (h) prohibited any person "who is
under indictment for, or who has been convicted in any court of, a crime
punishable by imprisonment for a term exceeding one year" from shipping, transporting, or receiving any firearm or ammunition in interstate
commerce. *Id.* at 105.

Case: 10-10393   06/22/2012   ID: 8224329   DktEntry: 65-1   Page: 11 of 15
Case 1:08-cr-00124-AWI   Document 402   Filed 06/22/12   Page 11 of 15

7426                UNITED STATES v. SUAREZ

not state, law. *United States v. Miller*, 434 F.3d 820, 823 (6th Cir. 2006); *United States v. Ortega*, 150 F.3d 937, 948 (8th Cir. 1998); *United States v. Cisneros*, 112 F.3d 1272, 1280 (5th Cir. 1997). We have held that a conviction is not final under § 841(b)(1) while that conviction is subject to direct appellate review, including certiorari. *Williams v. United States*, 651 F.2d 648, 649-51 (9th Cir. 1981); *see also Miller*, 434 F.3d at 823 ("[W]e have joined other federal circuit courts in adopting the standard for determining finality: a conviction becomes final for the purpose of sentencing when the time for taking a direct appeal from the judgment of conviction has expired.").

**[4]** This finality standard generally requires federal courts to look to state law in order to determine when the time for taking a direct appeal from the prior state conviction expires or has expired. *See, e.g.*, *id.* at 824 (defendant's deferred entry of judgment became a final conviction thirty days after he was sentenced to probation, because that was the time provided for appeal under Georgia law); *United States v. Vasquez*, 298 F.3d 354, 359 (5th Cir. 2002) (defendant's deferred adjudication became a final conviction after thirty days, because Texas law allows thirty days to appeal from deferred adjudication). Thus, under prevailing case law, we would look to California's rules of appeal to determine at what point Suarez's prior conviction became "final" for federal sentencing purposes.

**[5]** The circumstances of this case, however, have not been addressed in previous discussions of when a prior conviction becomes final under § 841(b)(1)(A). Under California law, no appeal is possible from a § 1000.3 plea, unless and until the defendant fails successfully to complete the court-ordered rehabilitation program and judgment is entered against him. *See People v. Mazurette*, 14 P.3d 227, 230 (Cal. 2001). This is because, in California, a judgment or order is not appealable unless expressly made so by statute, and the California legislature has not made a deferred entry of judgment order

UNITED STATES v. SUAREZ    7427

under § 1000.3 appealable. *See id.* at 229-30.[3] If a defendant successfully completes the rehabilitation program, the charges against him would be dismissed and no need would ever arise for the defendant to appeal his guilty plea. *Id.* at 230. If, on the other hand, the defendant fails to complete the program and judgment is entered against him pursuant to § 1000.3, then an appealable judgment would exist under California law. *Id.*; Cal. Penal Code § 1237.

[6] Consequently, Suarez never had the right or opportunity to appeal his guilty plea pursuant to § 1000.3. Because he successfully completed the drug rehabilitation program, the charge to which he pled guilty was dismissed, his guilty plea was not considered a conviction "for any purpose" under California law, and his arrest was deemed to have never occurred. Cal. Penal Code §§ 1000.1(d), 1000.4(a). We must therefore consider whether Suarez's guilty plea to a felony drug charge, which was at no point appealable and was dismissed without entry of judgment, nevertheless qualifies as a prior conviction that has become "final" under § 841(b)(1)(A), a question of first impression in our Circuit.

Traditional aids in statutory interpretation do not provide much assistance in determining the meaning of the word "final" in this context. Legislative history is of little help in interpreting the exact contours of the phrase "has become final" in § 841(b)(1)(A), because, as we have previously observed, there is scant legislative background for the 1970 Congressional amendment that introduced the finality requirement to the statute. *See Williams*, 651 F.2d at 649. Two

---

[3]In its 28(j) letter of February 16, 2012, the government correctly pointed out that an order granting probation while judgment is deferred is appealable under California law. *See People v. Medina*, 1 Cal. Rptr. 3d 546, 548 n.1 (Ct. App. 2003). That rule notwithstanding, there is no evidence in this record that a probation order was ever issued in Suarez's case. Further, the California Supreme Court has held that an order deferring entry of judgment is not to be treated like an order of probation for purposes of appeal. *See Mazurette*, 14 P.3d at 231-32.

factually-similar cases from our sister circuits have touched upon the finality issue, but only obliquely. *See Rivera-Rodriguez*, 617 F.3d 581, 609-10 (1st Cir. 2010); *Ortega*, 150 F.3d at 948.

In *Ortega*, the Eighth Circuit concluded that a Missouri suspended sentence qualified as a prior felony conviction which had become final within the meaning of § 841(b)(1)(A). *See id.* Much as in California, under Missouri law a suspended sentence is not considered a final judgment and, as such, is not appealable. *See* Mo. Rev. Stat. § 547.070. The *Ortega* court did not recognize that fact in its opinion; instead, the court focused its analysis on whether a Missouri suspended sentence was a "prior conviction" under § 841(b)(1) and did not explicitly consider whether a conviction that could never be appealed under state law could nonetheless be considered "final." 150 F.3d at 948. As a result, *Ortega* is of limited value in analyzing the question we must resolve in this case.

In *Rivera-Rodriguez*, a defendant argued that a prior Puerto Rican drug conviction was not "final" within the meaning of § 841(b)(1)(A) because no conviction or finding of guilt was ever entered against him; consequently, under Puerto Rican law, he could not take any appeal from his sentence of probation, which was later expunged from his record. 617 F.3d at 609. The First Circuit concluded that the probation sentence qualified as a § 841(b)(1)(A) prior conviction. *Id.* at 609-10. As in *Ortega*, however, the court failed to address the finality issue raised by the defendant. This silence means that *Rivera-Rodriguez* also does not directly address or resolve the question before us. Moreover, *Rivera-Rodriguez* is distinguishable in that the defendant there received a sentence of probation, whereas Suarez was merely permitted by the California court to participate in a drug education program and never received a formal sentence of probation or otherwise.

We have recognized that the finality requirement in § 841(b)(1)(A) likely reflects a temporal concern, rather than

UNITED STATES v. SUAREZ 7429

a substantive one. *See United States v. Guzman-Colores*, 959 F.2d 132, 135 (9th Cir. 1992) ("Congress, by amending § 841 to provide that underlying convictions must be 'final,' had most likely sought to eliminate the need for resentencing should the underlying conviction subsequently be reversed."). As a result, a legally cognizable sentence that was never subject to appeal under state law likely could still constitute a final prior conviction under § 841(b)(1)(A). *See Dickerson*, 460 U.S. at 111 (observing that, despite the fact that there was no formal judgment of guilt entered in the defendant's case, there still remained: (1) a charge of a crime of a disqualifying type; (2) a plea of guilty to that charge; and (3) the state court's placement of the defendant on probation).

**[7]** In light of this background, we conclude that, in order to qualify as a final prior conviction under § 841(b)(1)(A), a guilty plea must either: (1) ripen into a final judgment; or (2) result in a legally cognizable sentence. Suarez's plea does not meet this standard.

First, as discussed above, Suarez's plea never became an appealable final judgment pursuant to California law. This supports the conclusion that, at the time he pled guilty, proceedings in California court were still ongoing and therefore not "final." If Suarez had failed to complete his drug education program, only then would he have been formally adjudicated guilty; at that point, his conviction would have been "final" as defined in *Williams*. 651 F.2d at 649-51. That is not the case here.

Alternatively, Suarez's plea never resulted in a legally cognizable sentence, in that he was never placed on probation by the California court, nor was he sentenced to a term of imprisonment. *Cf. Rivera-Rodriguez*, 617 F.3d at 609 (holding that a defendant placed on eighteen-month probation under a rehabilitation program had suffered a final prior conviction); *Ortega*, 150 F.3d at 948 (8th Cir. 1998) (holding that a defendant who was required to serve three years of supervised pro-

bation had suffered a final prior conviction). Instead, Suarez was not placed on probation, but was permitted by the California court to participate in a privately-run drug education program, which he then successfully completed. Suarez's plea therefore never took on either of the characteristics of a *Dickerson* "conviction"; consequently, there was no final prior conviction within the meaning of § 841(b)(1)(A).

**[8]** In light of these considerations, we hold that, where a plea never ripens into either a final judgment or a legally cognizable sentence, there is no final prior conviction for purposes of § 841(b)(1)(A). Suarez's 2003 guilty plea and participation in a drug rehabilitation program resulted in neither a formal entry of judgment by the state court nor a sentence of imprisonment or probation. The district court therefore erred in applying the twenty-year mandatory minimum sentence under § 841(b)(1)(A) to Suarez.

## IV.  Conclusion

For the foregoing reasons, we affirm Suarez's conviction for conspiracy to distribute and to possess with intent to distribute methamphetamine, but we vacate Suarez's sentence and remand for resentencing in conformity with this opinion.

**Conviction AFFIRMED; sentence VACATED and REMANDED.**